Good morning, Your Honor. Robert DuPont, appearing on behalf of Appellants Burhan Akhtar, Beretsi Monson-Sese, and Emerson Angeles. As a matter of record, at the beginning I would like to inform the Court that Burhan Akhtar has qualified for legal permanent residency. He is no longer eligible for the visa status, but the other two appellants, Beretsi Monson-Sese and Emerson Angeles, are still a part of this. THE COURT Wait a minute. Wait a minute. Could you just explain that Mr. Akhtar has qualified for permanent resident status? What does that mean? BURKHARDT It means that he is actually a legal permanent resident. THE COURT Illegal. Illegal. BURKHARDT A legal permanent resident. He has his green card. THE COURT So he's an LPR as of when? BURKHARDT I believe late December 2003. THE COURT Okay. THE COURT How long does this case have to go on before the other two will be in that position? BURKHARDT Actually, quite a long time by virtue of their country of origin. Mr. Akhtar, as a native of Pakistan, his mother naturalized. He became immediately eligible to adjust to legal permanent resident status. That same – if that was done in the case of the two individuals from the Philippines, they actually have their dates set back several years. It would take longer for them to reach legal permanent residence. THE COURT When he was qualified, did he do that under a B rather than an A? BURKHARDT He would have been in B status. That's correct. THE COURT And he was in B status, and he then met the requirements and got his B – got a card under a B quota, right? BURKHARDT Yes, Your Honor. He – his – the I-130 petition was never terminated or denied. Once his number came up by virtue of his mother changing her status, he was able to adjust status to legal permanent residence. THE COURT What would have happened to him if – is Akhtar the one who had the one-day visa? BURKHARDT Mr. Akhtar, I believe, had a three-day visa. THE COURT Okay. He had the three-day visa. So he's admitted to the United States because he's eligible for a B visa. He comes here third day. He now becomes – his visa's expired. So if he were to leave the country at that time, what would be the consequence – the immigration consequences to him? Could he be – would he have been eligible to receive the LPR? BURKHARDT If he had left the country at that time, he could have returned to his home country, and then when his visa number became current, he could adjust – he could adjust overseas and come back to the United States. THE COURT All right. So what would be the consequences to him absent this lawsuit if he had simply overstayed the visa? BURKHARDT Well, he narrowly avoided one consequence. Once the INS had decided and applied the 214.15G of the California – of the – of the regs, he was accruing unauthorized status. THE COURT Which means that he could have been subject to an order of deportation. BURKHARDT Yes, and deportation could have been initiated. THE COURT And then he would not be eligible to get his LPR status. BURKHARDT If he had, in fact, been removed from this country, he would have been subjected to, I believe, a five-year bar to reentry. And he narrowly avoided – I'm sorry. THE COURT If they had instituted deportation proceedings against him and then he had left, what would have happened? Would he then have preserved his eligibility or would it have been a self-deportation? BURKHARDT No, Your Honor. I believe that if he had simply left once deportation proceedings had begun, he would still be subject to a deportation, an order of deportation. THE COURT And by virtue of him being a native of Pakistan, he was actually required to appear before the INS. And only by virtue of this case being on appeal was he not put into proceedings. He would have been put into proceedings. THE WITNESS In the consequences, he would have been deported and then he would have had to wait five years in Pakistan before he could again apply. BURKHARDT Yes, Your Honor. THE WITNESS He couldn't come in under V visa, so he would have to apply to come in under his mother's naturalized status. BURKHARDT That's correct. THE WITNESS Okay. Let's talk about the situation with the other two. Is this a class action or it's just three? BURKHARDT No, Your Honor. It just happens to be three of our clients. We imagine there's quite a large class of people subject to the same problem. We did not seek certification of the class. Basically, under the Life Act, we had the V visa regulations put in place. And there was a legislative history set forth. And if I could quote Senator Kennedy, the purpose of the V and K visas is to provide a speeding mechanism by which family members may be reunited. Likewise, in Congress, Congressman Conyers said, we sought to restore Section 245I of the status to stay in the country with their families while they await a decision. So it is the position of appellates that Congress did not contemplate that we would be bringing children here and then have their visas terminate and then re-separate families, nor did they wish to implement this type of regulation being implemented. You had provisions also put in place under 8 U.S.C. 118401B in which Congress limited authority to terminate the V visa. They essentially said that provision essentially holds that you terminate V visa status when the underlying application to adjust status cannot be adjudicated in that person's favor. Well, one thing I don't understand on that point is the State Department issues these V visas for how long? The statute under 8 U.S.C. 1101A.15B does not set a term. The Department of State and the INS in issuing regs undertook upon themselves to have a limiting term of two years and require the individual to continue to renew the V visa every two years. So the Department of State has taken the position that only people under 21 are eligible for the V visa because they have that policy of two years or until the day before the 21st birthday? That's correct. Have you made any contention that that's also in violation of the Life Act? I have not argued that point. Because it doesn't really apply to your three people? It didn't apply directly to them. This initially was an effort to simply allow these individuals to get employment authorization to gain some of the benefits that were guaranteed them under the V visa. But, in fact, CFR 214.15G was implemented. There was a protest, a note given from the American Immigration Lawyers Association pointing out this problem during the comment period, yet 214.15G was still implemented, which limited the period of authorized stay. That, in turn, was a focal point for the 214.15H dealing with employment authorization, .15I dealing with travel privileges, and then .15G dealing with manner in which the V visa may be terminated. So our first argument is that this is contrary to the intent of Congress. The second argument is that this has created absurd results. Nowhere in the history of immigration law that I'm aware of do we have visas done in the name of family unity resulting in a three-day authorized period of stay in terms of Burhan Akhtar, a 15-week period of stay for Reggie Sese, or, in the most extreme example, Emerson Angeles, who, according to the INS, only had an authorized period of stay really less than 24 hours. My guide just says the two-year thing works. I realize that's not before us. But if you have a 13-year-old child who is admitted to be with his family so the family is unified, he's only admitted for a two-year period? He's admitted for a two-year period. At age 15, he would apply again to renew his V visa. They don't have anything better to do than renew visas for children? Your Honor, I'm — I could comment on all the things that the INS does to make their job more difficult. And that's another focal point here is that if we're — one of the other purposes was to provide a speeding mechanism to ostensibly relieve some burden on the consulates for adjudicating these adjustment applications and allowing them to be done here in the United States. But here we're sending people back. You know, they've been adjudicated for the V visa to come here. Now we're sending them back so they can be re-adjudicated again to come back here. Was the purpose of this statute to reduce a backlog of some kind? They talk about lengthy delays and lots of people. Was the idea that after this backlog was cleared up, they would be able to — people would not have to wait these lengthy periods? Well, the idea was that you could remove this quite large number of spouses and children, allow them to sidestep processing at the consular stage and do it here in the United States. But here the reg has been implemented to send them right back and put them back in line. How does Chevron play into our analysis of the statute? The Chevron case? Yes. I mean, do we — this statute doesn't explicitly — well, does it? Does it explicitly address? Yes. Yes, Your Honor. That's been one of our basic arguments from the beginning, that when you look at 8 U.S.C. 1184.01b, they're saying we're only going to terminate these V visas when the underlying immigrant visa has been denied. And that's the operative word we're focusing on. Where's the denial? There's a lot of talk here about conversion and different categories under which this I-130 immigrant visa can be looked at. But where's the denial? The immigration — the immigrant visa is still pending. And I would also ask the court — submit it to the court that congressmen, in considering this drafting legislation, and voting on it, realize full well that 20-year-old children who qualify for this visa have an upcoming birthday, and that we will be facing this issue of losing the V visa status. So here we have an explicit provision saying here's how you terminate the V visa status. These — the visas issued to these three, one was for only a day or two? Yes. Emerson Angeles was — What's the purpose of that visa? Family reunification. For a day or two? I'm serious. I can't — I'm serious, too, Your Honor. The purpose is family reunification. For two days? And the officer who admitted this individual to the country apparently was of the same mind, because he gave him an authorized period that stayed well beyond the 24 hours. And what about the other two? How long were they — were their visas? Mr. Sese's visa, according to the USCIS, was valid for only 15 weeks. And Mr. Akhtar's visa was valid for three days. There must be some purpose to that. What — are you aware of a purpose? The only purpose I can divine, Your Honor, is that Congress tries to confer benefits, issue the legislation, they give their reasons. We want family reunification. We want to end this arbitrary separation of parents and children. And in drafting regs, USCIS takes very restrictive readings, sometimes exceeding the letter of the statute, and attempts to limit the — Well, maybe you ought to save your last five minutes or so, and we could ask the government those questions. Has any other court in the country addressed this besides the district court here and now us? As far as I know, this is a novel issue. And at the last national meeting of ALA, one of the speakers said this should be something that should be brought up before the court. So I'm not aware of any other pending. Thank you. Thank you. Thank you. May it please the Court. Catherine Hikita, assistant U.S. attorney on behalf of the apolice in this case. Your Honors, the worldwide level of family-sponsored immigrants is limited by Congress to a certain number. Can you answer the question I asked, count? What is the purpose of giving a one-day, three-day, several-week visa under this Act? Well, the purpose is to reunify the families. For one day or three days? If it should turn out to be that. No, no. That's what the visa is. If the visas are issued for three days, it's for the purpose of unifying a family? Until the immigrant number should come up, the visa number should come up. In case it comes up in those three days? Highly unlikely, Your Honor. No. But the purpose of the statute, if you look at the legislative history, is to reunify spouses and deal with the problems of backlog of spouses and minor children. It clearly says minor children in both the House report and the joint memorandum. But everybody knew in the legislative history that it takes about six years, on average, for these papers to get processed by the INS. So were they thinking the kids weren't going to age in those six years, that they weren't going to go beyond 21 years possibly? Well, the statute, we believe, is designed to benefit those who need it the most, really young children who need to stay with their families. It didn't say that anywhere in the statute. Well, it did say minor children in the legislative. Minor children is under 21, doesn't it? Right. Yes, under 21. But the closer you get to 21, when you apply, it takes three years. Well, actually, you have to have had your visa petition pending for three years before you could even qualify for visa status. So that's three years right there. And then to get the visa, it may take probably about a year to get that. Given that the statute contemplates expressly that you have to have had your visa petition or your papers pending for three years, they're not thinking, they're thinking the kids are going to at least be three years plus, right? They're not saying this is for babies. Not for babies, but it would benefit people who are 10 years old, 11 years old, 12 years old. Congress enacted this to benefit people who are 10, 11, and 12. They didn't put a specific number on it, but they did say minor children. And minor children are under 21. However, it's, when they apply for it, if they're closer to 21 years old, they're not going to get as much benefit as somebody who is. No. I mean, some people are obviously going to get a one-day or three-day trip. Does that, do you think that's what the statute contemplated, that they would, Congress intended to allow them to reunify for a day or three days and then ship them out of the country again? Well, the statute, the life statute itself cannot be looked at by itself. It's part of the Immigration Nationality Act. So you must look at the whole Immigration Act. And in the Immigration Nationality Act, there is a definition of child, unmarried person under 21 years old. And so you must, you know, consider that as well as the Life Act provisions and what it was set out for. Well, it says that children can come. Where in the Act does it say that children have to leave? That they, the purpose of the Act is to unify and then disunify the family. Okay. It's, we go back to the age-out provisions that exist throughout immigration law, not just only in the visa situation, but other I-130 beneficiary petitions as well. If, because the definition of child is under 21 years old, if an unmarried person as well, if the child were to marry, then that would take them out of the status. But see, this is what confuses me. The eligibility for a V visa is governed at the moment they apply, right? So if they're under 21 and they're not married, they are eligible for that V visa. And in the statute, it doesn't end the authorized term of the V visa until the papers that were going to be processed, whichever form, which help make them eligible, are denied, revoked, or granted, or some action is taken. So I don't understand where this, where in the statute or how the INS came up with this age-out termination applying to eligibility. They're eligible, they get it, and then there's a termination procedure. Okay. I think the, what the appellants are doing is confusing the issue in terms of termination. There is a termination regulation or provision. The statute or the regulation? In the, I believe it's in the regulation. In the statute. In the statute. Yes, correct, Your Honor. However, that is not the only way the V visa status can be terminated. Because if you look at the statute, it says that they must be a beneficiary of the 2A preference category. Where does it say that in the statute? It is, this is 1184 we're talking about. It is section 1101A15V. This is the Life Act provision which added the new subsection regarding V visa applicants. Okay. I may, I might not be following, but explain, tell me how this applies only to section 2A. Okay. And if you look at 8 U.S.C. section 1101A15V, and it says, an alien who is the beneficiary of a petition to court a status under section 203A2A, and that is the F2A preference category, dealing with spouses and children of LPRs or lawful permanent residents. So you must be a beneficiary of that preference category. In order to what? In order to qualify for the V visa. So that's my point. So then it issues. You're qualified. It issues. And you must remain in that status. Where does it say that? It says in order to come to the country, to get the benefit of all of this, you know, then you're here because you've been reunited as Congress wanted you to. And you're eligible for a B. Where does it say you've got to leave the country? Well, it indicates that you are, you must be a beneficiary, who is a beneficiary. For the application. In order to come here. Where does it talk about continued 2A category? Well, you must remain in the status to keep the V visa eligibility. In other words, if you marry, if the person turns 21, then you're out of that status. So you're saying, in answer to my question, at what point in time is eligibility determined, you're saying eligibility is a continuous concept under this, that you must remain eligible at every single point. Correct. Okay. Where does it say that in the statute? Well, if you look at the statute itself, it talks about an alien who is a beneficiary rather than who was once a beneficiary. Or they don't use the past tense. So they use the present tense in that sense. And it's not very clear, is it? Because you can say, you can use the present tense to say who is at that point in time. Or you could say who is and always will be. Or to put it differently, it depends on what the meaning of is is. Right. However, Your Honors, if you look at what the definition of child is, it clearly is an unmarried person under 21 years old. Well, that's clear. That's clear. It's just, I mean, I think the statute, for it to say what you're trying to say it says, it needs to be written differently. It's a problem. Because I understand the sense of what you're talking about and why the INS is taking this position and why the State Department is taking this position. It's just not what the statute seems to say. Well, we respectfully disagree, Your Honor. But if you look at the, not just focus on this v. provision itself, but look at the INS, the Immigration Nationality Act as a whole, which talks about the definition of child and what it is. Once the person no longer is a child, then they go out of the VBs and status. And that is something, the aging out process is something that exists in the immigration law, not just in the VBs, that situation, but in other situations as well. Well, where it was clear, sometimes Congress has acted to remove the irrationality of the INS's handling of those things. I mean, that they passed an act so that you wouldn't age out. Sometimes it makes no sense. But here, this is a particular act that says they want to reunite families. Isn't that the purpose of this? Well, the purpose is to reenact spouses and minor unmarried children, yes. So you reunite them. Does it make sense to take a family, reunite it, and then because you haven't gotten around to giving them a number, to then break up the family again? It doesn't make sense if that's what Congress intended. Well, I think what Your Honors should probably focus on is the fact that the, it appears what Congress wanted to do was to reunite families with minor children, young children. Minor children, yes. But if they're close to 21 years old, they're pretty well able to take care of themselves. Except that you're the ones who are giving them the visas when they're that age. I mean, it's, I don't see how you can come into court and say, well, we gave them the visas. They're covered by the act. And now you say, well, Congress really didn't intend to cover them. No, they were covered when they applied for it. So Congress intended to reunite those families and to bring them here, and then when they got to be 21, to break up the family again? When they became 21, they could return back to their country and wait for the rest of the family. Well, to break up the family. They could have, without this act, they would have had to wait in the countries they were in. And Congress said, no, we want to reunite a family. And you read the statute as saying we want to reunite them, you know, as long as we can act swiftly and give them the numbers. But otherwise, once they get to be 21, we want to break up the family again and send them back. Well, the statute was not designed to address every single situation. And these ---- And it took the INS to figure that out, to say, yes, what they really intended to do was break up the family again. Well, Your Honor, we would not put it that way. It's designed to ameliorate the harshness, but not to get rid of every harsh scenario. The other part of this that really bothers me, and we have another case this week that kind of is, there's a reinstatement of a prior deportation order case that plays into this. Because say the person gets their B visa, they overstay. That's a violation of INS law. They get ordered deported. If they self-deport after that order of deportation, it can be reinstated without any process at all. If they do leave under that order of deportation, they can't come back for another five years. Now, those are all other provisions of the INS that plays into that. And that seems to be particularly harsh consequences than the whole idea was to reunify the family in the first place. You're making it so that this argument, I mean, you're asking us to look at immigration law as a whole, but there's all these very dire consequences that can result from someone coming in for a day. How do they leave the next day? They've overstayed. And there's all these dire immigration consequences that can occur as a result of that. Your Honor, there are consequences. However, we must look at it in terms of how many visas there are actually available. There are limitations for country and limitations for depending on what preference category you're in. If you're a spouse or child of an LPR, then you're higher than an unmarried son or daughter of an LPR and so forth. There are different conditions. Isn't the way the Life Act is set up, it's set up where people have already had their papers pending for three years and part of the family is already in the process in either naturalization proceedings or something. So they're in a process so they have an anchor here in this country. So you're talking about people, whether it's 2A or 2B, who have way more priority to be in this country than other people who don't have anyone here. They may or may not have another process going in terms of naturalization. That's that's, you know, on an individual case by case basis. So it's true that all these people are eligible to be right. For when they pass 21, they lose their A status. Yes, correct. But they are eligible under B. Correct. So they just move down the list of preferences. Preferences only. But they keep their priority date. So that that they do keep, except under F2B. Why in the world do you want to send them out of the country again? What's the reason? The reason is because they age out. They simply turned out. No, no, no. I understand. Is there any any possible policy reason why you want to break up the families again and send them out of the country just because they reach the age of 21? I mean, you read the statute is requiring that if the statute didn't require. Well, I wasn't. Do you think. Can you. Is there any reason that you think Congress would have wanted to do that? The reason would probably be based on the number of visas available and the number of V visas possibly available to other individuals. Well, if they stay here, does that mean somebody else can't get a V visa? I don't have a specific answer to that particular question. I know that there are the State Department estimate about 300000 visas or individuals coming in under the visa program. And since these V visas are maybe renewed for up to two year periods at a time, that may or may not affect the number of the 300000 visas. Just generally, though, across the board with all visas, not just V visas. There are limitations based on the country and based on the preference category. So Congress needs to, Congress did set forth, you know, specific numerical amounts for those items. So that's what the EIS is trying to strictly adhere to in terms of the numbers of visas issued under the different categories. So your argument is they have to deport someone, send back someone who they let in previously to make room for someone else to come in who they're then going to deport again. I don't know that that's necessarily the case. And that's what you're saying. You're saying it's possible that that's this. You're not saying there really is. No, I know. That's not a I don't know. That's the only policy reason that you're offering, which may not exist, which may not exist. Right. I'm sorry. So is there any other policy reason for this interpretation? Well, I think the policy reason is to keep intact or uphold the definition of child, you know, being under a unmarried person under 21 years old. And that applies across the board, not just to the V visa applicants, but to all other visa applicants as well. And if you start making exceptions for these V visa individuals, once they turn 21, you allow them to stay on. And once they marry, you allow them to stay on. That completely erodes the other. Well, there are provisions. There are provisions that Congress has made specifically that say that after you turn 21 and you're not a child, you can still say if you have pending applications. This isn't the only one. If they didn't erode the definition of child by the amendment, whatever the act is, we had a case the other day on this. And the issue was if you had an application pending at the time the act was passed, you were then protected, even though you turned 21. The question we had was whether the decision was final because the BIA had made it or whether it's final when the court makes it. But there's no question that for people who had these applications pending before the BIA at the effective date of the act, that they were treated no matter whether when they passed 21, it didn't matter anymore. Okay. Is Your Honor speaking about the Child Status Protection Act? I don't know. That's probably it. I can't. Okay. I mean, the way they entitle acts these days, like protect, save America, you can't tell what the laws are.  They have nothing to do with the title. Okay. If that is what Your Honor is speaking about, then we've addressed that in our brief. The Child Status Protection Act does not apply here. No, it may not apply, but I say that's an example of where you have not destroyed the meaning of child by allowing people to stay after they're 21. It wouldn't – your policy reason was we would destroy the meaning of child if we said you could stay after 21. Well, if Congress were to specifically address that in this fee visa situation, then that would be perfectly appropriate, Your Honor, perfectly acceptable. And the INS would follow that and adhere to it accordingly. Okay. But in this case, there is no such protection or statute that says that, that once you, you know, turn 21, the definition of child does not apply to this fee visa situation. It does not state that anywhere in the statute. Okay. All right. Thank you, counsel. You have time if you want. No. Thank you. The case just argued will be submitted. The final case of the morning is U.S. v. Hernandez Garcia. Thank you.
judges: Browning, Reinhardt, Wardlaw